HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER D. SAGESER,

          Plaintiff,

    v.

STEWART TITLE OF SEATTLE, LLC,

          Defendant.

CASE NO. C09-582RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment (Dkt. # 43).  The Defendant requested oral argument; the Plaintiff did not.  The court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence.  For the reasons explained below, the court GRANTS the Defendant's motion (Dkt. # 43).

## II.  BACKGROUND

In June 2005, Plaintiff Peter Sageser purchased property in Renton, Washington, from Kim Tutin.  Mr. Sageser paid for the property with two mortgage loans, and he intended to use the property as a rental investment.  But shortly after Mr. Sageser purchased the property, Ms. Tutin informed him that she regretted selling the property and would like the opportunity to buy it back if Mr. Sageser ever decided to sell.

ORDER – 1

1    In early 2008, Mr. Sageser decided to sell the property and Ms. Tutin agreed to

2    buy it back at that time.  Ms. Tutin intended to use the property as a rental investment.

3    Though neither party they agreed upon an April 30, 2008 closing date, neither party

4    needed to close the transaction at any particular time.  Defendant Stewart Title of Seattle,

5    LLC ("Stewart Title"), now known as Stewart Title Company, acted as the escrow

6    company for the closing.

7        On April 21, 2008, Mr. Sageser received and reviewed a copy of the HUD-1

8    Settlement Statement pertaining to his sale.  The next day, Mr. Sageser received and

9    reviewed the escrow instructions and "pay-off statements" for the two mortgage loans on

10   the property.  Based on those documents, Mr. Sageser understood that the two lenders on

11   the mortgage loans would prepare and record "reconveyance" documents that would

12   extinguish their respective interests in the property.

13       On April 25, Mr. Sageser again reviewed the HUD-1 Statement and the pay-off

14   statements, and noticed that the HUD-1 Statement listed a "reconveyance tracking fee" of

15   $250 under the "Government Recording and Transfer Charges" section. *See* Def.'s Mot.,

16   Ex. E.  He believed that this fee was inappropriate because his two mortgage lenders had

17   told him that they would be preparing, recording, and charging him for the

18   reconveyances.  Mr. Sageser contacted Stewart Title to inquire about, *inter alia*, the

19   reconveyance tracking fee:

20           Upon my [review] of the estimated HUD 1 and the payoff statements
        from my lenders you provided me at my request, I have some questions
21      about the closing fees.  They relate to the courier charges and the
        "Reconveyance Tracking Fees" on the estimated HUD 1.
22
            First, my lender payoff statements indicate I am already paying
23      "recording", "release fee" and "reconveyance/trustee fee" to them.  I am
        assuming these are the costs associated with the reconveyance of the deeds
24      of trust to them, thereby removing those encumbrances.  It seems I should
        not be paying these costs twice.  If a tracking service is needed to verify the
25      recording of these documents, I am told there are services that accomplish
        this for $35 per reconveyance.  The $250 shown on my estimated HUD 1
26

27

28   ORDER – 2

seems very high.  I would like that fee either waived or discounted
significantly.

       . . .

Def.'s Mot., Ex. J.  A Stewart Title employee, Nicole Johnson Giamatti, responded to Mr.

Sageser's inquiry as follows, in relevant part:

> Reconveyance Tracking Fee covers the cost of our risk that the current
> lenders will actually perform and necessary Attorney fees.  The actual
> recording of the Reconveyance alone cost more then (sic) $35.00. . . . The
> fee's (sic) on the Estimated Settlement Statement/HUD are not negotiable.
> Please let me know if you would like me to proceed.

Def.'s Mot., Ex. K.

        Mr. Sageser decided that, rather than challenge what he believed to be an improper

reconveyance tracking fee, he would move forward with the sale "as an accommodation

to Ms. Tutin" and "go ahead and fight this at a later date."  Def.'s Mot., Ex. A at 95-96,

119.  The sale closed on April 30, 2008, and Mr. Sageser did not rescind the transaction

during the three-day waiting period that followed.  Stewart Title tracked the

reconveyances of Mr. Sageser's two mortgage loans, confirming that the lenders had

properly prepared and recorded the reconveyance documents.

        Mr. Sageser filed suit in April 2009.  Some claims were dismissed in September

2010, and the claims remaining in this lawsuit are for breach of contract, breach of

fiduciary duty, breach of agency duty, and violation of Washington's Consumer

Protection Act.  Stewart Title has moved for summary judgment against all the remaining

claims, and the court now turns to consider that motion.[1]

---

[1] In his Opposition, Mr. Sageser stated that he "does not oppose the grant of summary
judgment" against his claims for breach of fiduciary duty and breach of agency duty.  *See* Pltf.'s
Opp'n at 16.  Thus, this order addresses only his claims for breach of contract and violation of
Washington's Consumer Protection Act.

ORDER – 3

# III.  ANALYSIS

## A.  Legal Standards.

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

## B.  Plaintiff's Claim for Breach of Contract Fails as a Matter of Law.

Mr. Sageser contends that Stewart Title breached the Escrow Instructions by "charging reconveyance fees in addition to the escrow fee charged for no additional settlement services other than those [Stewart Title] was already obligated to perform." FAC ¶ 78.  According to Mr. Sageser, the "escrow fee" applied under the Escrow Instructions compensated Stewart Title for ensuring that the appropriate reconveyance documents are prepared and recorded.  Because, Mr. Sageser contends, Stewart Title did not actually perform any additional services related to reconveying, he claims that the reconveyance tracking fee is a "fictitious" fee and that Stewart Title breached the contract "in specifically charging for services it well knew would never be necessary."  Pltf.'s Opp'n at 12:10-11.

ORDER – 4

The court rejects Mr. Sageser's arguments for a number of reasons.  First, the Escrow Instructions do not provide that the escrow fee includes compensation for tracking reconveyances.  Thus, Stewart Title did not violate the Escrow Instructions by allegedly "double-charging" for tracking services.  Second, Mr. Sageser's arguments about the "fictitious" purpose of the fee is contradicted by the deposition testimony of multiple Stewart Title employees.  The record contains unrefuted evidence that Stewart Title tracked the status of each reconveyance.  *See* Martinez Decl. ¶¶ 7-8, Ex. 1.  If necessary, Stewart Title worked to be appointed successor trustee if a lender's reconveyance was tardy, such that Stewart Title could prepare and record the reconveyance itself.  *See* Def.'s Mot., Ex. T at 18-19-54.  Or, in other situations, Stewart Title would pay a third-party trustee to prepare and record the reconveyance.  *See id*. at 36, 53-54.  Thus, Mr. Sageser's contention that Stewart Title did not perform any reconveyance-tracking services in order to earn the fee is simply not supported by the record.[2]  That Stewart Title has, since 2009, outsourced its reconveyance-tracking services to another company that charges a smaller fee does not render Stewart Title's fee "fictitious" or otherwise in breach of contract.  For these reasons, the court finds that Mr. Sageser's claim for breach of contract fails as a matter of law, because Mr. Sageser has not identified any contract provision that Stewart Title has breached.

**C.    There is No Evidence to Support at Least One Element of Plaintiff's CPA Claim.**

In Washington, there are five elements of a private Consumer Protection Act ("CPA") claim: "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that

---

[2] While it is true that the April 25, 2008 e-mail Mr. Sageser received from Ms. Giamatti, a Stewart Title employee. describes the purpose of the fee in vaguely misleading terms, Mr. Sageser did not rely on Ms. Giamatti's interpretation when deciding to go forward with the transaction.  He testified in a deposition that after hearing from Ms. Giamatti, he still believed the fee was improper but decided to close the transaction anyway.  Def.'s Mot., Ex. A at 119:12-18.  Moreover, Ms. Giamatti's description of the fee is not probative as to what tracking services Stewart Title actually performed, so it could not form the basis of a claim for breach of contract.

ORDER – 5

impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act." *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wash.2d 299, 312 (1993) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986)). Stewart Title contends that Mr. Sageser cannot prove that Stewart Title's conduct constitutes a deceptive act, nor that an alleged deceptive act caused him injury.

Mr. Sageser contends he was deceived by Stewart Title in three ways: (1) The HUD-1 statement indicated that the reconveyance tracking fee would be paid to the trustee and that it was a "government recording and transfer charge"; (2) Ms. Giamatti's e-mail indicated that the reconveyance tracking fee covered the "cost of risk that the current lenders and would actually perform and necessary Attorney Fees," even though it compensated Stewart Title for performing other services.

Mr. Sageser's Opposition does not address the damages caused by the alleged deceptive acts, and the record before the court contains no evidence of any such damage. To the contrary, the record establishes that the allegedly deceptive conduct played no role in Mr. Sageser's decision to close the transaction. As to the statements on the HUD-1, to whatever degree Mr. Sageser was misled by the description of the fee in that document, he sought clarification from Stewart Title and Ms. Giamatti's e-mail informed him that the fee was not a charge for government recording and transfer, and that the fee was for Stewart Title's benefit alone. As to the vaguely inaccurate statements in Ms. Giamatti's e-mail, to whatever degree her e-mail was inaccurate, it had no bearing on Mr. Sageser's decision to close the transaction. Mr. Sageser testified that even though he still objected to the fee after receiving Ms. Giamatti's e-mail, he nonetheless went forward with closing as an "accommodation" to Ms. Tutin. *See* Def.'s Mot., Ex. A at 95. Mr. Sageser further testified in a deposition that even after he received, he still believed the imposition of the fee was unlawful but still wanted to close the transaction:

ORDER – 6

A: . . . I acknowledged [the Stewart Title employee's] explanation, but again, in the back of my mind I wasn't thoroughly convinced that her answer satisfied my question about the double feeing of the reconveyance.

Q: You still thought the fee was improper.

A: Yes.

Def.'s Mot., Ex. A at 119:12-18. Thus, there is no evidence that the alleged deception played any role in Mr. Sageser's decision to close the transaction. Without such a showing, Mr. Sageser's CPA claim fails. *See Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 83 (2007) ("A [CPA] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."). The evidence before the court establishes that the alleged misrepresentations were irrelevant to Mr. Sageser's decision-making process, and thus the court finds that because there is no evidence to support one of the elements of his CPA claim, Mr. Sageser's claim fails.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendant's motion (Dkt. # 43). DATED this 5th day of December, 2011.

The Honorable Richard A. Jones
United States District Judge

ORDER – 7